```
                   UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

```
UNITED STATES OF AMERICA      :
                              :   NO. 1:03-CR-00050
                              :      1:04-cr-00018(2)
    v.                        :
                              :   OPINION AND ORDER
                              :
A. WILLIAM ERPENBECK, JR.     :
                              :
                              :
```

This matter is before the Court on Defendant's Motion to Disqualify Pursuant to 28 U.S.C. § 144, 28 U.S.C. § 455(a), 28 U.S.C. § 455(b)(1), and S.D. Ohio Crim. R. 12.4.1(b) (doc. 109), the Response of the United States in Opposition (doc. 111), and Defendant's Reply (doc. 112).

On September 26, 2005, the Sixth Circuit Court of Appeals issued an Order remanding this case to this Court for resentencing consistent with United States v. Booker, 543 U.S. 220 (2005).  This Judge had originally sentenced Defendant, on April 1, 2004, to a jail term of 360 months for defrauding federally insured financial institutions, as well as for obstruction of justice charges brought in Case No. 1:04-CR-00018 (doc. 27).  Defendant's present motion seeks to disqualify this Judge from presiding over the resentencing proceedings and that another judge be assigned to hear the case.

**I. Defendant's Motion (doc. 109)**

In support of his Motion to Disqualify, Defendant files an affidavit stating that prior to his sentencing on April 1, 2004,

Defendant made recorded comments monitored by the Federal Bureau of Investigation ("FBI") to the effect that this Judge is a bad judge, "dumb as a box of rocks," and that it would be detrimental to the Defendant for this Judge to preside over his sentencing because "Judge Spiegel is not sympathetic towards white-collar criminals" (Id.). Defendant alleges that this Judge had knowledge of such remarks at the time of sentencing, and granted all of the government's requested sentencing enhancements (Id.). In further support of his motion, Defendant refers to tape-recorded threats made against this Judge and several other individuals, by Defendant's father, for which a jury found Defendant's father guilty on December 8, 2005 (Id.). Defendant states that on April 20, 2005, this Judge spoke publicly regarding the threats made by his father, stated that he had "faced death before," as a United States Marine, and that "millions of dollars" were "still missing" and that he and the FBI hoped to see whether Defendant's father would call upon those funds to finance the alleged "hit," and in so doing, disclose the source and location of those funds (Id.). Defendant argues that as his father has never been convicted of financial crimes, such statements show this Judge was making an unwarranted connection between himself and his father (Id.). Defendant argues that such statements further show a belief, without evidentiary basis, that "millions of dollars" were to be used to finance the "hit," and such belief indicates this Judge has

personal bias against him. Accordingly, Defendant argues that disqualification of this Judge is appropriate under both 28 U.S.C. § 144 and 28 U.S.C. § 455(b)(1).

Defendant further argues that this Judge should recuse himself from this matter under 28 U.S.C. § 455(a), which requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned" (Id.). Defendant, citing Roberts v. Bailar, 625 F.2d 125, 129 (6th Cir. 1980), argues an objective standard applies, such that the standard is not the judge's own introspective assessment of his impartiality, but rather what a reasonable person knowing all the relevant facts would think about the impartiality of the judge (Id.). Defendant concedes that threats made against a judge will not necessarily justify disqualification (Id. citing United States v. Cooley, 1 F.3d 985, 994 (10th Cir. 1993). However, Defendant argues that a death threat not communicated directly to a judge by a defendant, but rather by an "extrajudicial" source such as the FBI, is grounds for recusal, because such a threat is not necessarily made for the purpose of obtaining recusal (Id.). Defendant cites to three cases, United States v. Greenspan, 26 F.3d 1001, 1006 (10th Cir. 1994), United States v. Cerrella, 529 F. Supp. 1373, 1374-75, (S.D. Fla. 1982), and In re Nettles, 394 F.3d 1001, 1002 (7th Cir. 2005), all of which involve recusal in response to threats or plots made by defendants against judges and courts. Defendant argues a

reasonable person would harbor doubts as to this Judge's impartiality in sentencing Defendant based on the threats made by Defendant's father. As further evidence in support of this position, Defendant argues that on November 10, 2005, a Cincinnati news anchor commented that it is interesting that Defendant will go again before Judge Spiegel for sentencing, because Defendant's "father allegedly tried to have a hit man kill Spiegel" (Id.). In response a reporter stated that "that's a big issue," and that Defendant "could end up getting another judge" (Id.). Defendant argues the issue is appearances, and clearly the appearance of impartiality is being questioned, such that the balance should tip in favor of recusal (Id.).

**II. The Government's Response (doc. 111)**

The government responds that Defendant's motion is nothing more than judge shopping (doc. 111). The government argues that Defendant bases his affidavit on hearsay, that Defendant never claims any link to any plan to kill this Judge, and that Defendant never put forth any facts establishing that this Judge would punish him for the threats of his father (Id.). The government argues that allegations that "Judge Spiegel granted all of the Government's requested enhancements" and ordered a longer sentence than in unrelated cases cannot serve as the basis for judicial disqualification (Id. citing United States v. Sammons, 918 F.2d 592, 599 (6th Cir. 1990)). In any event, the government argues, it

is factually untrue that the Judge ruled in favor of the government on every sentencing issue (Id.). In fact, argues the government, the Court departed downward from the Sentencing Guidelines term of 720 months to a range of 360-720 months, over the government's objection (Id.).

The government next argues that alleged efforts to take out a contract on a district judge standing alone do not warrant disqualification, even where those threats are made by a defendant himself (Id.). The government argues Defendant's reliance on Greenspan, 26 F.3d 1001 is misplaced because in that case the judge accelerated the date of the defendant's sentencing in response to threats even though defendant's counsel had been appointed only two days prior to the sentencing date (Id.). None of those unique circumstances, argues the government, apply to the case at hand (Id.). In this case, the Judge did not alter any normal procedures because of Defendant's father's threat (Id. citing United States v. Hairston, No. 01-4692, 2002 WL 1269963 at *1 (4th Cir. June 7, 2002)(per curiam)). The government argues that the Sixth Circuit has rejected the theory that an investigation by the FBI or the Marshal's Service of any alleged threat changes the analysis (Id.). In Latham v. United States, 106 F. Appx. 395 (6th Cir. 2004), the Court did not find recusal mandated where the FBI had investigated a contract allegedly put on the judge (Id.).

The government next argues that none of the case law

cited by Defendant involves a case where a threat by a defendant could render the judge impartial in the case of a second defendant (Id.). Bias, argues the government, must be against the complaining party, not someone else (Id. citing United States v. DeLuca, 692 F.2d 1277, 1282 (9th Cir. 1982)). Defendant's attempt to show such bias by interpreting this judge's statement about missing funds and the financing of a hit, argues the government, is an interpretation based on pure speculation (Id.). A presiding judge is not required to recuse himself because of unsupported speculation (Id. citing United States v. Cherry, 330 F.3d 658, 665 (4th Cir. 2003). Moreover, argues the government, Defendant's affidavit is based on what Defendant's lawyer told Defendant, and hearsay does not provide any basis for recusal (Id. citing United States v. Haldeman, 559 F.2d 31, 135 (D.C. Cir. 1976) cert. denied, 431 U.S. 933 (1977)).

In closing, the government argues that Defendant's motion and affidavit are untimely, as Defendant has possessed the factual basis for his motion and affidavit for nearly half a year without filing (Id.). Even should the analysis be limited to time after remand, the government argues it was filed fifty days after the case was returned to district court, well outside the ten-day limit specified in Section 144. And finally, the government argues that comments between newscasters do not demonstrate the perspective of a reasonable observer who is informed of all the surrounding facts

and circumstances (Id.).

**III. Defendant's Reply (doc. 112)**

Defendant replies that taken together, all the facts of this case, when considered by a reasonable person, would create doubt as to the partiality of this Judge (doc. 112). Where the question is close as to whether the judge's partiality might be questioned, Defendant contends, the judge must recuse himself (Id. citing Union Planters Bank v. L&J Development Co., Inc., 115 F.3d 378, 383 (6th Cir. 1997)).

Defendant argues the government misconstrued his argument that the Judge granted every one of the government's requested enhancements, and that he has never stated that the Judge ruled in the government's favor on every sentencing issue (Id.). Moreover, Defendant argues the government sweeps too broadly with its statement that judicial rulings can never form the basis of disqualification (Id.). According to Defendant, a judicial ruling, alone, rarely constitutes the basis for disqualification, but it could be a factor (Id. citing Liteky v. United States, 510 U.S. 540, 555 (1994)). Defendant argues that the fact that this Judge granted all the government's requested enhancements is yet one more fact that would cause a reasonable person, knowing all the facts, to doubt the Judge's impartiality (Id.).

Defendant argues that because his father, and not he himself, threatened this Judge, it is clear that Defendant could


not have been seeking recusal or judge shopping (Id.).  Defendant argues the fact that this Judge "publicly connected Defendant to the threat," shows deficient the government's argument that Defendant himself did not make the threat (Id.).  Although this Judge did not alter any courtroom procedures, Defendant argues that under the "unique circumstances" here, where the Judge made public statements connecting Defendant to the threat, a reasonable person could question his impartiality (Id.).  Defendant next argues that the newscasters' comments provide at least some evidence that a reasonable person might harbor questions as to the appearance of Judge Spiegel presiding over Defendant's sentencing (Id.).  For all of these reasons, Defendant argues this Judge should disqualify himself pursuant to Section 455(a) (Id.).

Defendant next reiterates his argument that this Judge should disqualify himself due to prejudice or bias, under 28 U.S.C. § 144 and 28 U.S.C. § 455(b)(1) (Id.).  Defendant replies that the facts the government refers to as hearsay in Defendant's affidavit must be taken as true, in passing on the sufficiency of the affidavit (Id. citing United State v. Sykes, 7 F.3d 1331, 1339 (7th Cir. 1993)).  Defendant argues that the statements in his affidavit about this Judge's remarks are subject to the procedural safeguard of counsel of record indicating the affidavit was made in good faith (Id.).  Defendant argues the affidavit precisely states the time and place of the remarks, and thus should be taken as reliable

(Id.). Finally, Defendant argues the motion and affidavit were timely filed, and states that the Court set a briefing schedule, to which he has complied, at the October 12, 2005 status conference in this matter (Id.).

**IV. Discussion**

As a preliminary matter, the Court notes that although it was aware of recorded conversations between Defendant and his sister and others, which served as a basis for the obstruction of charges against him, it was not aware of Defendant's specific comments that this Judge is "dumb as a box of rocks." It is only the fact that Defendant's lawyer has injected these comments into the proceedings in the present motion, and stated such comments to the press, that the Court has noticed their existence. In any event, the Court's file shows that the transcript of Defendant's conversation including such comments was provided to the Court in February of 2004, well before Defendant's original sentencing. It strikes the Court as disingenuous for Defendant to resuscitate such comments now, as a basis to request this Judge to recuse himself, when Defendant did not do so in the first instance. Even had Defendant done so in the first place, "The mere fact that a defendant has made derogatory remarks about a judge is insufficient to convince a sane and reasonable mind that the attacked judge is biased or prejudiced." United States of America v. Bray, 546 F.2d at 858 (10th Cir. 1976). Moreover, "[t]o allow prior derogatory

remarks about a judge to cause the latter's compulsory recusal would enable any defendant to cause the recusal of any judge merely by making disparaging statements about him." Id. Such dubious use of these comments comes "not even close" to raising a valid question of this Court's partiality. Union Planters Bank v. L&J Development Co., Inc., 115 F.3d 378, 383 (6th Cir. 1997)).

The Court further notes that Defendant's motion relies in great part on the fact that this Judge, in response to a question at a Cincinnati Academy of Leadership for Lawyers ("CALL") program, on April 20, 2005, commented on the death threats made against him by Defendant's father and the security measures that were implemented in response. Defendant's father had already been indicted on such threats in the Eastern District of Kentucky, on April 8, 2005, and thus the threats were a matter of public record. The fact that the threats were taken seriously by the U.S. Attorney's Office, and viewed by investigators as an indication that Defendant's father could have access to unaccounted-for funds is not an indication of this Judge's bias against the Defendant. Rather, the fact that this Judge was put on notice of such threats, and put on notice of why investigators were concerned, is merely an indication that Defendant's father's threats could have had substance. No unreasonable inferences were made. Construing bias against Defendant from this Judge's neutral comments about a matter of public record concerning Defendant's father strikes this Court

as an attempt at simple judge shopping. This Judge is not required to recuse himself based on this sort of speculation. United States v. Cherry, 330 F.3d 658, 665 (4th Cir. 2003). Neither will the Court be manipulated into recusal on such a basis.

The Court finds the government's position well-taken that Defendant has failed to proffer any authority showing recusal where someone other than the Defendant allegedly undertook efforts to kill the district judge. Indeed, threats against a judge by a Defendant himself do not generally furnish a basis for disqualification, nor do reporters' personal opinions, nor media notoriety. United States v. Cooley, 1 F.3d 985, 994 (10th Cir. 1993). Reporters do not necessarily demonstrate the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances. As the government persuasively argues, if the court would have to recuse itself in the face of a defendant's threats, or even on the more attenuated basis of the media's views, the consequences would be staggering.

In this case, the Court has not changed any of its procedures in relation to the Defendant in response to the threats of his father. Indeed, at the original sentencing, the Court, over the government's objection, departed downward from the Sentencing Guideline term of 720 months to a range of 360-720 months, for Defendant's crimes of defrauding federally insured financial institutions and obstruction of justice. If the Court

were somehow miffed at Defendant for his prior comments, it would defy reason that this Judge would consider as mitigating circumstances that Defendant

> was a respected member of the Northern Kentucky community. He has never been cited or arrested for any type of criminal conduct. The offenses the Defendant committed were nonviolent, and there were no drugs involved. After A. William Erpenbeck, Jr. turned himself in to authorities in Case No. CR-1-03-50, he cooperated with the FBI.

Transcript of April 1, 2004 Sentencing Proceedings (doc. 76). The Court further took into account Defendant's agreement to plead guilty to the charges of obstruction of justice, which precipitated his father to similarly plead guilty of such charges (Id.). The Court found that these circumstances, taken together, merited a downward departure from a base offense level of 46, with a term of sixty years, to a base offense level of 42, which allows for a minimum sentence of thirty years and maximum sentence of sixty years. The Court imposed the minimum sentence, effectively lopping off thirty years from Defendant's sentence. No reasonable person when considering these facts of the case would question the Court's partiality.

**V. Conclusion**

The Court does not find well-taken Defendant's position that it must recuse itself from presiding over his sentencing proceedings. Defendant has not proffered persuasive evidence of actual bias or prejudice against him. 28 U.S.C. §§ 144 and

455(b)(1).  Neither does the Court find well-taken the argument that a reasonable person, knowing all the facts, would conclude that the Judge's impartiality might reasonably be questioned.  28 U.S.C. § 455(a).

Accordingly, the Court DENIES Defendant's Motion to Disqualify Pursuant to 28 U.S.C. § 144, 28 U.S.C. § 455(a), 28 U.S.C. § 455(b)(1), and S.D. Ohio Crim. R. 12.4.1(b).

SO ORDERED.

Dated: December 22, 2005      s/S. Arthur Spiegel

                                          S. Arthur Spiegel
                                          United States Senior District Judge